IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

BOBBY PIERCE                                                          PLAINTIFF

VERSUS                                            CIVIL ACTION NO. 3:19cv2-DPJ-RHW

ANDREW SAUL,[1]
COMMISSIONER OF SOCIAL SECURITY                                      DEFENDANT

## REPORT AND RECOMMENDATION

Before the Court is [12] Plaintiff Bobby Pierce's June 14, 2019 motion for summary

judgment in this action seeking judicial review of the denial of his claim for Social Security

disability benefits and supplemental security income (SSI).  Pierce asserts the Commissioner's

decision is unsupported by substantial evidence because the Administrative Law Judge (ALJ)

failed to properly consider medical opinion evidence in determining Pierce's residual functional

capacity and failed to establish the existence of work which Pierce can perform.  The

Commissioner responded to the motion and Pierce has replied.  [15], [16]  Briefing is now

complete and the matter is ripe for ruling.

Facts and Procedural History

On September 24, 2015, Pierce filed applications for Social Security disability benefits

and SSI, alleging disability since December 31, 2007 (at age 42) due to unspecified

back/neck/arm/shoulder problems, diabetes, pain, limited mobility in standing and sitting,

shortness of breath, chronic obstructive pulmonary disease (COPD), emphysema, chronic pain,

tingling in his left hand, unspecified numbness, nerve damage in his neck and a knot on his right

elbow.  [10, pp. 16, 121-22, 163-75, 190]  The claims were denied initially on May 4, 2016 and

---

[1] Andrew Saul is the current Commissioner of the Social Security Administration.

on reconsideration, July 1, 2016.  [10, pp. 121-24]  Plaintiff requested a hearing, and on

November 8, 2017, ALJ Jim Fraiser heard the matter, receiving documentary evidence and

hearing testimony from Pierce, who was accompanied by his attorney,[2] and from Vocational

Expert (VE) Robert Davies.  [10, pp. 61-86]  At the beginning of the hearing, Plaintiff's counsel

moved to amend the claimed date of Pierce's onset of disability from December 7, 2007 to

September 24, 2015, which was beyond his date last insured.[3]  Both counsel and Pierce

acknowledged they were dropping Pierce's Title II claim, and the ALJ granted the motion to

amend.  [10, pp. 63-64]

Pierce was 56 years old at the time of the hearing, and lived with his disabled, retired 82-

year-old father.[4]  He testified he completed the eighth grade in school and has no GED.  He is a

smoker and stated he quit drinking in his late 20s, although the ALJ pointed out his medical

records indicate otherwise.  Pierce is right handed, 5'8" tall and weighed 196 pounds; he did not

feel his weight affected his ability to walk, stand or breathe.  Pierce testified he has constant pain,

worse some days than others, which prevents him from working; he has done no work since

September 2015.  His pain is on the right side of his neck down to his shoulder and into his hand,

in his mid- and lower back down into his right hip, and in his right elbow.  When the pain

reaches eight on a ten-point scale, he takes pain medication, which does not stop his pain, but

makes it manageable.  He sometimes lies down in bed to relieve pain.

Pierce testified he cooks, does laundry, sweeps, mops and vacuums, drives two or three

times a week, and goes shopping for grocery and household items.  He stated he can pick up 20-

---

[2] Pierce has been represented by counsel since June 14, 2016.  [10, p. 133]

[3] Pierce's date last insured was December 31, 2012.  [10, p.186]

[4] Pierce told Dr. Boggs in December 2015 that one of his two brothers and both of his sisters have also been classified disabled.  [10, p. 318]

30 pounds but could not hold it or "tote it far," the most he could carry across a room would be

10-15 pounds; he can stand 20-30 minutes before having to sit down[5] and could not climb many

steps to get into a building; he can bend some, and can stoop if he has something to hold onto.

His pain is aggravated by reaching up or to the side, and he does not believe he could do that for

two and a half hours at a time in an eight-hour day.  In response to a question about getting along

with other people, Pierce claimed he "used to have a pretty good personality" and when he

encounters people he knows in the grocery store or such, he tries to get along with them.  He

testified he has cataracts and a lazy right eye and does not see well enough to read.  He does look

at his mail, sometimes using a magnifying glass, and keeps his television on "probably eight

hours a day," but may not watch it more than an hour or hour and a half.  He sleeps about four

hours a night.   [10, pp. 63-70]

Pierce's work history includes being cashier/manager of a convenience store which

included cleaning up, stocking the store, lifting 20-30 pounds, and doing paperwork.  [10, pp. 74-

75, 191]  He frequently forgets things and his sister reminds him to take his medicine a few times

a week.  [10, pp. 76-77]  He has crying spells, sometimes several times a day, particularly when

he thinks about his deceased mother with whom he lived until she died.  [10, pp. 77-78]  Pierce

indicated he lived with his parents in December 2015, and medical records of April 14, 2016

indicate his mother "died recently."  [10, pp. 319, 342]

Vocational Expert (VE) Robert Davies testified Pierce's work as a convenience store

manager/cashier is classified light, unskilled work, SVP 7.[6]  As performed by Pierce (including

---

[5] He later revised this to standing 10-15 minutes, before having to sit perhaps 30 minutes.  [10, pp. 71-72]

[6] Jobs are classified sedentary, light, medium, heavy and very heavy.  Light work involves lifting no more than 20 pounds at a time and frequent lifting/carrying files, ledgers, small tools, etc., weighing up to 10 pounds.  Medium work involves lifting no more than 50 pounds at a time with frequent lifting/carrying of up to 25 pounds.  20 C.F.R. § 404.1567(b), (c).  Unskilled work "needs little or no judgment to do simple

stocking and lifting more than 20 pounds as he testified) the job would be in the exertional range

of medium work. Assuming a person of Pierce's age, educational level and work background

who could concentrate for a two-hour period and occasionally interact with the general public;

could lift 15 pounds occasionally and 10 pounds frequently; could walk, stand for four hours of

an eight-hour day for 20 minutes at a time, and sit for six hours for two hours at a time; could

occasionally stoop, climb, reach overhead with the right upper extremity; could push and pull

less than ten pounds with the right lower extremity and right upper extremity; could never

crouch, kneel or crawl; could use no foot controls with the right lower extremity; could do no

commercial driving or work around heights, hazardous machines, ladders, or with sharp objects;

and with no concentrated exposure to chemicals, dust, fumes and extreme temperatures, VE

Davies opined that Pierce could not perform his past relevant work, but could perform light work

with a sit/stand option, including jobs as an electrical assembler, electronics worker, and

production assembler, all of which are light, unskilled work, SVP 2, and available in significant

numbers in the national economy. [10, pp. 80-2] VE Davies testified that light work includes

the ability to stand and walk at least six hours, and that inability to perform tasks 20% of the time

would preclude competitive work. The VE did not believe unskilled type work would exist for

one who could only occasionally reach overhead or in front with the dominant right arm, or who

had to lie down at intervals during the day, or who would forget/fail to complete 3 out of 5

instructions/tasks. [10, p. 82-85]

---

duties that can be learned on the job in a short period of time." 20 C.F.R. §§ 404.1568(a), 416.968(a).
SVP (specific vocational preparation) refers to the amount of time required for a typical worker to learn
how to do the job. Unskilled work corresponds to SVP 1 or 2; semi-skilled work corresponds to
SVP 3 or 4 and skilled work corresponds to SVP 5-9 in the DOT. SSR 00-4p, 2000 WL 1898704.

On February 15, 2018, the ALJ issued a 13-page opinion finding Pierce not disabled from December 31, 2007 through the date of the decision. [10, pp. 16-28] On November 9, 2018, the Appeals Council denied review of that decision. [10, pp. 5-9] Pierce now seeks judicial review.

Standard of Review

Judicial review of a final decision of the Commissioner of Social Security is limited to determining whether substantial record evidence supports the Commissioner's factual findings, and whether such findings are reached through the application of correct legal standards. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion;" it is more than a scintilla, but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). To determine whether substantial evidence supports the decision, the Court reviews the entire record. *Villa*, 895 F.2d at 1022. Issues of credibility of witnesses and conflicts in the evidence are for resolution by the Commissioner; the Court may not re-weigh the record evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1995); *Audler v. Astrue*, 501 F.3d 446, 447 (5th Cir. 2007); *Harris*, 209 F.3d at 417 (quoting *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995)); *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). A finding of "no substantial evidence" is appropriate only if no credible evidentiary choices or medical findings support the decision. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988); *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983).

Factual findings supported by substantial record evidence are conclusive and must be upheld. *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000); *Martinez v. Chater*, 64

F.3d 172, 173 (5th Cir. 1995).  The Court may reverse the Commissioner's decision if it is based

upon faulty legal analysis but should accept the Commissioner's legal conclusions if they are

within reasonable meanings of the statutory or regulatory language.  *Chevron, U.S.A., Inc. v.*

*Natural Resources Defense Council*, 467 U.S. 837, 841-44 (1984).  Absent a finding that the

decision is unsupported by substantial evidence or that the Commissioner applied an incorrect

legal standard, the Court must affirm the Commissioner's decision.  *Boyd v. Apfel*, 239 F.3d 698,

704 (5th Cir. 2001).  The Commissioner's decision "is accorded great deference and will not be

disturbed unless the reviewing court cannot find substantial evidence in the record to support the

... decision or finds that the Commissioner made an error of law."  *Leggett v. Chater*, 67 F.3d

558, 564 (5th Cir. 1995) (footnotes omitted).

Law and Analysis

The Social Security Act defines disability as "inability to engage in any substantial

gainful activity by reason of any medically determinable physical or mental impairment which

can be expected to result in death or which has lasted or can be expected to last for a continuous

period of not less than 12 months..."  42 U.S.C. § 423(d)(1)(A).  It was Pierce's burden to prove

disability which kept him from engaging in substantial gainful work, *i.e.*, work involving

significant physical or mental activities and usually done for pay or profit.  *Masterson v. v.*

*Barnhart*, 309 F.3d 267, 271 (5th Cir. 2002); *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir.

1991); *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987); *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th

Cir. 1992) ("suffering of some impairment does not establish disability; a claimant is disabled

only if [he] is 'incapable of engaging in *any* substantial gainful activity'").

There is no dispute that ALJ Fraiser applied the correct law, the five-step sequential

evaluation process for determining disability.  Pierce does not challenge the ALJ's findings at

Steps One through Three of the evaluation that he had not engaged in substantial gainful activity since December 31, 2007; that he has severe impairments of "generalized anxiety disorder, depression, diabetes, neuropathy, vision loss, degenerative disc disease, osteoarthritis, chronic obstructive pulmonary disease, tobacco abuse and cataracts" which significantly limit his ability to perform basic work activities; and that his impairment or combination of impairments do not meet or medically equal the severity of the listed impairments.  Nor does he challenge the finding at Step Four that he cannot return to his past work managing a convenience store.

Pierce objects to the ALJ's finding of his residual functional capacity (RFC), urging that although the ALJ found Pierce's vision loss a severe impairment, he included no limitations for decreased visual acuity in determining RFC.  Pierce claims good visual acuity is necessary to perform one of the jobs the VE identified as other work he could do, therefore the Commission failed to carry its burden to demonstrate the existence of other work he could do.  Pierce relies upon an April 26, 2016 ophthalmological consultative examination by Dr. Cook to support his argument, stressing the finding that he has only 10% visual field efficiency of the right eye – he fails to mention that the report states he retains 95% visual field efficiency of the left eye.    In addition, Dr. Cook's visual field test noted "normal" left eye, and "restricted" right eye [10, pp. 357, 99]; he noted that Pierce had a "lifelong history of decreased vision OD" (right eye), found no "observed limitations due to visual problems," and no "effects of the visual problems on daily living activities."  Nor did Dr. Cook opine that Pierce was incapable of working.  As to precautions that should be taken in the work place Dr. Cook said only, "avoid hazardous job site."  [10,  pp. 356-57]  Dr. Cook's findings comport with the activities Pierce testified he does – driving, shopping, cooking, laundry, sweeping and other household chores and watching television.  [10, p. 233]

Pierce's initial applications for benefits did not claim any disability due to vision problems, and medical records of September 2014 indicated no reduced vision. [10, p. 311-12] In December 2015, he told Dr. Boggs he "uses reading glasses and had tried prescription glasses for a while;" that he has some difficulty with focus of his right eye, and now is having problems with his left." [10, p. 319] In February 2016, Pierce did not have his eyeglasses with him at a medical appointment. An April 2016 medical evaluation found his vision impairment not severe. And in April 2017, when asked whether he had trouble concentrating on things "such as reading the newspaper or watching television," he responded, "not at all." He also indicated he does not wear glasses and had not been diagnosed with cataracts. [10, pp. 337, 367, 99, 103, 113, 117] The ALJ's hypothetical to the VE specifically precluded commercial driving, working around heights, hazardous machines, ladders, or with sharp objects. Pierce contends these limitations do not sufficiently reflect his visual limitations, although he does not suggest what additional limitations should have been included. And although his lawyer asked the VE about the ability to perform the identified jobs in light of the sit/stand/walk limitations, poor concentration, and limitations on reaching, he did not ask a single question about the functional effect of a visual impairment on performing the jobs. The undersigned finds substantial record evidence supports the ALJ's decision, and there is no merit in Pierce's charge that the ALJ failed to properly consider medical evidence regarding his visual impairment. It bears repeating that the existence of an impairment or condition does not equate to disability; rather, disability exists only if the impairment renders the claimant "incapable of engaging in *any* substantial gainful activity." *Anthony v. Sullivan*, 954 F.2d at 293.

Pierce also contends the RFC finding is invalid because the ALJ imposed insufficient limitations due to osteoarthritis, particularly in his right upper extremity. The ALJ limited Pierce

to reaching overhead only occasionally and to push/pull no more than ten pounds, but he found the medical record does not support Dr. Pasha's finding that Pierce was limited to only occasional reaching forward, and laterally and overhead with his right upper extremity.  Pierce disagrees with the ALJ.  While it is true that an April 18, 2016 x-ray showed "mild degenerative arthritic changes of the a.c. joint without fracture dislocation" [10, p. 354], the undersigned notes that less than a month before Dr. Pasha's examination, Dr. Nanney found Pierce had no shoulder joint tenderness [10, p. 348], and medical records documenting numerous medical visits from April 2016 through July 3, 2017 also find no shoulder (or other) joint tenderness, as well as findings of normal reflexes and normal range of motion in the shoulder, without muscle weakness or decrease in muscle tone.  [10, pp.  343, 383, 390, 376, 373, 369, 363-4]  Pierce has presented no authority requiring the ALJ to favor the State Agency medical consultant's opinion over that of a physician who treated Pierce both before and after the consultant saw him.  An ALJ "is free to reject the opinion of any physician when the evidence supports a contrary conclusion." *Martinez v. Chater*, 64 F.3d at 176.  As previously stated, the weight to be accorded the evidence, and conflicts in the evidence are for resolution by the Commissioner, not by the Court.  The undersigned finds substantial record evidence supports the ALJ's finding that Pierce's arthritic shoulder limited him to only occasional overhead reaching, and that limitation was properly included in the hypothetical posed to the Vocational Expert.

Pierce argues the jobs identified by the VE are insufficient to meet the Commission's burden at Step 5 of the sequential evaluation process by challenging the credibility of the VE due to the fact that he cited the same Dictionary of Occupational Titles (DOT) code for two of the

three jobs he identified as work Pierce remained capable of performing.[7]   Pierce does not

contest the job descriptions/qualifications given by the VE for those jobs, nor does he challenge

the identification of the third job of production assembler.  The VE testified there are over

50,000 electrical assembler jobs, 180,000 electronics worker jobs, and 250,000 production

assembler jobs available in the United States.  [10, pp. 81-82]  Therefore, even if the electronics

worker job were removed from consideration due to the mistaken code number, the VE still

identified a significant number of jobs for Pierce.  The Fifth Circuit has held 50,000 jobs in the

national economy to be a significant number, and District Courts in this Circuit have held

likewise.  See *Lirley v. Barnhart*, 124 F.App'x 283, 284 (5th Cir. 2005); *March v. U.S. Comm'r.*

*Soc. Sec. Adm.*, 2008 WL 5273725 at *4 (W.D. La. Dec. 16, 2008) (finding 52,000 jobs

nationally a significant number); *Caronia v. Colvin*, 2013 WL 5192904 at *7 (N.D. Tex. Sept.

13, 2013) (2,000-3,000 jobs in Texas and 50,000 nationally held sufficient); *Thomas v. Astrue*,

2012 WL 3544837 at *6 (S.D. Miss. July 31, 2012) (120,000 jobs nationally constitute a

significant number).  If the vocational expert can enumerate a significant number of jobs existing

in one or more occupations which the Plaintiff can perform, the decision should be affirmed.  See

*Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000).

Pierce next urges his limited education prevents him from performing the electrical

assembler job because the job requires a GED.  Even if that were true, and both the electrical

assembler and electronics worker jobs were removed from consideration, Pierce makes no

argument to invalidate the 250,000 available production assembler jobs.  Finally, in considering

educational levels needed to perform a particular job, the Commissioner does not look merely at

---

[7] The VE cited DOT code 729.687-010 for both the jobs of Electrical Assembler and those of Electronics Worker. [10, pp. 81-82]  While the code is correct for the Electrical Assembler job, the proper DOT code for Electronics Worker appears to be 726.687-010.

the number of years of formal schooling, but recognizes that, "… the numerical grade level that

[a claimant] completed in school may not represent [his] actual educational abilities," which may

be higher or lower.  20 C.F.R. §§ 404.1564(b), 416.964(b).

> Education is primarily used to mean formal schooling or other training which contributes to your ability to meet vocational requirements, for example, reasoning ability, communication skills, and arithmetical ability.  However, if you do not have formal schooling, this does not necessarily mean that you are uneducated or lack these abilities. *Past work experience and the kinds of responsibilities you had when you were working may show that you have intellectual abilities, although you may have little formal education*.

20 C.F.R. §§ 404.1564(a), 416.964(a) (emphasis added).  It is noteworthy that the DOT listing

for a convenience store manager (185.167-046) also indicates a GED educational level, yet

Pierce performed that job for some fifteen years before he stopped working due to his physical

complaints.  The jobs identified by the VE require significantly lower intellectual levels than

Pierce's prior work.

Having reviewed the entire record, the briefs and arguments of the parties, the

undersigned finds the ALJ fairly summarized and discussed the evidence, articulated his reasons

for giving more or less weight to specific evidence, and accurately cited the record evidence

which supports his findings.

## RECOMMENDATION

Bearing in mind the Court's limited function on review and respecting the prerogative of

the Commission to decide issues of credibility and weight to be given evidence, the undersigned

finds substantial evidence supports the Commissioner's final decision and it is in accord with

relevant legal standards.  The undersigned therefore recommends that Plaintiff's motion for

summary judgment be denied, and the Commissioner's decision be affirmed.

## NOTICE OF RIGHT TO APPEAL/OBJECT

Within 14 days after service of a copy of this Report and Recommendation a party may serve and file with the Clerk written objections to it, specifically identifying the findings, conclusions, and recommendations to which he objects. *L.U.Civ.R.* 72(a)(3). The District Court need not consider frivolous, conclusive, or general objections. The opposing party must file responses to objections within seven days after service or notify the District Judge that he does not intend to respond. Absent timely written objections, one may not attack on appeal any proposed factual finding or legal conclusion accepted by the District Court, except on plain error grounds. *Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

Signed this the 24th day of January 2020.

/s/ *Robert H. Walker*

ROBERT H. WALKER
UNITED STATES MAGISTRATE JUDGE