UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

BOBBY PIERCE                                                                                    PLAINTIFF

V.                                                            CIVIL ACTION NO. 3:19-CV-2-DPJ-RHW

ANDREW SAUL,
COMMISSIONER OF SOCIAL SECURITY                                                DEFENDANT

ORDER

An Administrative Law Judge (ALJ) denied Plaintiff Bobby Pierce's claim for disability benefits. Pierce appealed and filed a motion for summary judgment [12]. Upon referral, Magistrate Judge Robert H. Walker recommended that the motion be denied and the ALJ's decision be affirmed. Pierce filed an Objection [18]; the Commissioner declined to file a response, and the time to do so has passed. For the reasons stated, the Court finds the Report and Recommendation [17] should be adopted as the opinion of the Court.

Judge Walker thoroughly addressed the grounds Pierce presented in his appeal and correctly concluded that the Commissioner's decision should be affirmed. This Order focuses on two points Pierce chose to revisit in his Objection. He asserts that the ALJ, in determining his residual functional capacity (RFC), failed to properly take into consideration his (1) decreased visual acuity and (2) his limitations due to osteoarthritis in his right upper extremity. Obj. [18] at 1.

Looking first to Pierce's vision claim, as Judge Walker pointed out, the ALJ acknowledged Pierce's vision loss; relied on the findings of the ophthalmological consultative examiner, Dr. Cook; and incorporated restrictions consistent with Dr. Cook's report—avoidance of hazardous work. R&R [17] at 7–8. Pierce believes that the ALJ did not go far enough.

To support this argument, he contends Dr. Cook "found that Plaintiff lacks useful binocular vision in all directions, even with glasses, for both distance and near vision." Obj. [18] at 3. But Pierce's synopsis does not adequately consider the differences between his right and left eyes or Dr. Cook's recommendations as to his limitations. Dr. Cook reported a visual field test described as "restricted" for the right eye but "normal" for the left eye and likewise recorded a visual field efficiency of 10% for the right eye but 95% for the left eye. R&R [17] at 7; R. [10] at 357 (CM/ECF pagination) (Dr. Cook Report); *see id.* at 24 (ALJ Opinion) (referencing examination by Dr. Cook); *id.* at 25 (noting decreased vision in the right eye and near-normal vision in the left eye). Dr. Cook described Pierce's prognosis as "good" as to the left eye, found no observed limitations due to visual problems, and indicated his visual problems would have no effect on daily living activities. R. [10] at 357 (Dr. Cook Report). And lastly, as to precautions in the workplace, Dr. Cook opined that Pierce should "avoid hazardous job site[s]." *Id.*

The ALJ incorporated Dr. Cook's recommendation, noting: "The undersigned assigns significant weight to the opinion of the claimant's eye doctor . . . . He stated that the claimant should avoid hazards." *Id.* at 26 (ALJ Opinion); *see id.* ("Because of poor vision, he should not work around hazards."). And in describing Pierce's RFC, the ALJ prohibited "work around heights, hazardous machinery or ladders, or to drive commercially." *Id.* at 22 (ALJ Opinion). As pointed out by Judge Walker, "Pierce contends these limitations do not sufficiently reflect his visual limitation, although he does not suggest what additional limitations should have been included." R&R [17] at 8. The Court agrees with Judge Walker's holding that "substantial

To support this argument, he contends Dr. Cook "found that Plaintiff lacks useful binocular vision in all directions, even with glasses, for both distance and near vision." Obj. [18] at 3. But Pierce's synopsis does not adequately consider the differences between his right and left eyes or Dr. Cook's recommendations as to his limitations. Dr. Cook reported a visual field test described as "restricted" for the right eye but "normal" for the left eye and likewise recorded a visual field efficiency of 10% for the right eye but 95% for the left eye. R&R [17] at 7; R. [10] at 357 (CM/ECF pagination) (Dr. Cook Report); *see id.* at 24 (ALJ Opinion) (referencing examination by Dr. Cook); *id.* at 25 (noting decreased vision in the right eye and near-normal vision in the left eye). Dr. Cook described Pierce's prognosis as "good" as to the left eye, found no observed limitations due to visual problems, and indicated his visual problems would have no effect on daily living activities. R. [10] at 357 (Dr. Cook Report). And lastly, as to precautions in the workplace, Dr. Cook opined that Pierce should "avoid hazardous job site[s]." *Id.*

The ALJ incorporated Dr. Cook's recommendation, noting: "The undersigned assigns significant weight to the opinion of the claimant's eye doctor . . . . He stated that the claimant should avoid hazards." *Id.* at 26 (ALJ Opinion); *see id.* ("Because of poor vision, he should not work around hazards."). And in describing Pierce's RFC, the ALJ prohibited "work around heights, hazardous machinery or ladders, or to drive commercially." *Id.* at 22 (ALJ Opinion). As pointed out by Judge Walker, "Pierce contends these limitations do not sufficiently reflect his visual limitation, although he does not suggest what additional limitations should have been included." R&R [17] at 8. The Court agrees with Judge Walker's holding that "substantial

record evidence supports the ALJ's decision, and there is no merit in Pierce's charge that the ALJ failed to properly consider medical evidence regarding his visual impairment." *Id.*[1]

Next, Pierce says the ALJ failed to give "due consideration" to the opinion of the State Agency medical consultant regarding the limited use of his right shoulder. Obj. [18] at 4. In evaluating Pierce's RFC, the ALJ concluded that "[h]e can occasionally reach overhead with the right upper extremity" and "can push/pull less than ten pounds . . . with the right upper extremity." R. [10] at 22 (ALJ Opinion). So, while the ALJ recognized some limitation, Pierce again believes the ALJ did not go far enough.

The State Agency medical consultant at issue concluded Pierce suffered from severe osteoarthritis, relying on the findings of Dr. Pasha, who examined Pierce on February 4, 2016. *Id*. at 114 (consultative examination report) (noting osteoarthritis); *id.* at 117 (incorporating Dr. Pasha's examination). At that exam, Dr. Pasha found that Pierce experienced "[p]ain in the right shoulder on deep palpation" and limited range of motion; he recommended obtaining an x-ray of the right shoulder. *Id.* at 337.

That x-ray was performed on April 18, 2016, and revealed only "mild degenerative arthritic changes of the a.c. joint without fracture." *Id.* at 354 (X-ray Report); *see id.* at 23 (ALJ Opinion) ("Imaging of the right shoulder showed mild degenerative arthritic changes of the AC

---

[1] Pierce also criticizes Judge Walker for "commenting that other examiners did not find additional and significant limitations" because these examiners were not ophthalmologists. Obj. [18] at 4 (citing R&R [17] at 7–8). But Judge Walker merely observed that additional record evidence is consistent with Dr. Cook's finding of no limitations and no effect on daily living activities. R&R [17] at 8 (noting Pierce did not wear his glasses and reported no difficulty reading or watching television). Moreover, the ALJ likewise remarked that Dr. Cook's opinion "is supported by the record as a whole." R. [10] at 26 (ALJ Opinion); *see id.* at 23 (citing testimony by Pierce that he could drive); *id.* at 24 (noting Pierce did not have his glasses at a doctor appointment); *id.* at 25 (noting Pierce "is able to drive and shop in stores").

3

joint without fracture dislocation."). At a medical examination around that time, the examining physician noted "no shoulder joint tenderness." *Id.* at 343 (April 8, 2016 treatment notes); *see id.* at 23 (ALJ Opinion) ("His doctor found no shoulder, elbow or wrist joint tenderness."); *see also id.* at 348 (Jan. 11, 2016 treatment notes also noting "no shoulder joint tenderness").

Faced with these treatment notes and imaging results, the ALJ opined,

> The undersigned assigns some weight to the opinion of the state agency medical consultants (Exhibits 1A and 2A). The undersigned finds that the amounts given for lift/carry are supported by the record as a whole and are reflected by the residual functional capacity. Limitations given as to the claimant's ability to stand for a full six hours and to occasionally reach are not supported by the medical record. . . . The opinion that the claimant is not able to use his right arm is based on subjective evidence. The claimant did not complain about ability to reach until he went to the consultative examination. Examinations are mostly normal. No diagnostic imaging of objective tests support this.

*Id.* at 26 (ALJ Opinion). Likewise, the ALJ gave substantial weight to Dr. Pasha's findings, except for the reaching limitations, which the ALJ found "were not supported by medical record," specifically noting "[i]maging of the right shoulder shows only mild arthritis." *Id.*

As Judge Walker noted, the ALJ "is free to reject the opinion of any physician when the evidence supports a contrary conclusion." *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995) (quoting *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987)); *see* R&R [17] at 9; *see also* R. [10] at 23 (ALJ Opinion) (citing testimony by Pierce that he "could lift up to thirty pounds and could carry about fifteen pounds); *id.* at 22 (setting RFC that allows occasional reaching and pushing/pulling less than ten pounds"). The Court agrees that substantial record evidence supports the ALJ's findings as to Pierce's arthritic shoulder.[2]

---

[2] Pierce again expresses concern that Judge Walker pointed to other evidence related to his right shoulder that the ALJ never cited. Obj. [18] at 4 (citing R&R [17] at 9). This argument is not supported by the record. *See* R&R [17] at 9 (referencing medical visits that were reflected in the ALJ opinion and the administrative record).

The Court has considered all arguments raised; those not addressed would not have changed the result. The Court finds the R&R should be adopted as the opinion of the Court; the Commissioner's decision is affirmed. Pierce's motion for summary judgment [12] is denied.

A separate judgment will be entered in accordance with Federal Rule of Civil Procedure 58.

**SO ORDERED AND ADJUDGED** this the 17th day of March, 2020.

s/ *Daniel P. Jordan III*
CHIEF UNITED STATES DISTRICT JUDGE